[Doc. No. 28]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

JOSEPH R. TORDELLA, D.O.,

                Plaintiff,

    v.

COUNTY OF CAPE MAY, BOARD OF
CHOSEN FREEHOLDERS,

                Defendant.

Civil No. 18-15101 (RBK/MJS)

## O P I N I O N

This matter comes before the Court upon the "Motion for Leave to File First Amended Complaint" ("Motion") filed by plaintiff Joseph Tordella, D.O. ("plaintiff") [Doc. No. 28]. The Motion is unopposed. The Court exercises its discretion to decide plaintiff's motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, plaintiff's Motion is **GRANTED.**

**Background**

Plaintiff filed a two-count complaint against the County of Cape May, Board of Chosen Freeholders ("defendant") on May 18, 2018, asserting claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.S.J.A. 10:5-1 et seq. See generally, Compl. [Doc. No. 1]. The

1

present action stems from the termination of plaintiff's employment as Medical Director of Cape May County. Id. According to plaintiff, he was abruptly terminated without explanation in April, 2017 then replaced by a physician fifteen years his junior. Mot. at 1-2. Plaintiff's complaint alleges that upon seeking an explanation for his termination from Cape May County for approximately six months following his termination, on October 17, 2017 the County supplied subjective, false and unsubstantiated justifications as a pretext for unlawful age discrimination.[1] Compl. at ¶ 12.

During the course of discovery, plaintiff's counsel deposed Jeffrey Lindsay, Human Resources Director of Cape May County, Linda Thornton, former Administrator of Crest Haven Nursing and Rehabilitation Center ("Crest Haven"), a nursing facility run by Cape May County, and Gerald Thornton, Freeholder Director of Cape May County, all on January 16, 2020. Plaintiff claims each of these

---

[1] Specifically, the reasons identified in an email from the County's Director of Human Resources, Jeffrey Lindsay, included: (a) the County ". . . was . . . in the process of transitioning it's administration . . . and with that the County saw it as an appropriate time to move in a different direction with the Medical Director", and (b) ". . . the County's desire to have a Medical Director that is fully engaged in helping Crest Haven become a premier nursing home in the region . . . ", and (c) the County wanted a "Medical Director who would respond promptly and provide advice to . . . " the nursing home administrative staff, and (d) the County wanted a "Medical Director who is present in the building on a regular basis", and (e) a "Medical Director who is willing to call attending physicians and nurses to resolve compliance issues." Compl. at ¶ 12.

witnesses stated the reason for termination as being the "change of direction" set forth in the email from Jeffrey Lindsay. Mot. at 3.

According to plaintiff, two weeks after the January 16, 2020 depositions, on January 30, 2020 "[d]efendant served late responses to [p]laintiff's discovery requests by dumping 90 pages of uncategorized and unidentified documents" in counsel for plaintiff's email. Mot. at 3. Plaintiff contends that these emails contain statements made by Beth Bozzelli, then County Administrator and Clerk of the Board of Chosen Freeholders, indicating plaintiff was terminated for his conduct and statements related to a February 2017 incident in which he supported the determination of another doctor at Crest Haven, Dr. Salesin, that a patient was competent to discharge herself from the facility – a determination that plaintiff contends implicates medical ethics and New Jersey patients-rights laws and which was opposed by the Crest Haven administration. Mot. at 4, 7.

Plaintiff then undertook to depose Beth Bozzelli and other witnesses identified in defendant's initial response to discovery requests. Mot. at 6. Those depositions were originally scheduled for March 9, 2020 but ultimately did not take place until December 11, 2020 due to cancellations and delays, including the COVID-19 pandemic. Mot. at 4, 5. Plaintiff claims that eleven minutes prior to the start of the depositions on December 11, 2020, defense

counsel sent a second set of documents by email containing
communications relevant to plaintiff's termination. Id.

Based on the contents of the emails disclosed and Beth
Bozzelli's deposition testimony, plaintiff seeks to plead in the
alternative that he was terminated for his conduct and statements
related to the Dr. Salesin incident and, to that end, amend the
Complaint to add claims for relief under the First Amendment and
for wrongful discharge in violation of New Jersey public policy.

**Discussion**

A party may amend its pleading once as a matter of right
within either (1) twenty-one days of serving it; or (2) where the
pleading is one to which a responsive pleading is required, the
earlier of twenty-one days following service of the responsive
pleading or service of a motion under Rule 12(b), (e), or (f) of
the Federal Rules of Civil Procedure. FED. R. CIV. P. 15(a)(1). Once
those deadlines have expired, "a party may amend its pleading only
with the opposing party's written consent or the court's leave."
FED. R. CIV. P. 15(a)(2). "The court should freely give leave where
justice so requires." Id.

Where a party moves to amend after the deadline in a
scheduling order has passed, the "good cause" standard of Rule
16(b)(4) of the Federal Rules of Civil Procedure applies. Premier
Comp Sols., LLC v. UPMC, 970 F.3d 316, 319 (3d Cir. 2020). "A party

must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." Id.

In the instant case, a scheduling Order was entered on March 22, 2019 setting the deadline for completion of pretrial discovery at November 27, 2019. [Doc. No. 9]. The Order also set the time within which to seek amendments to expire at August 1, 2019. Id. Several scheduling orders were entered thereafter extending the deadline for completion of pretrial discovery; however, at no point was an extension given for the time to seek amendments. Because leave to amend is sought beyond the August 1, 2019 deadline in this case, plaintiff must surmount both Rule 16(b)(4) and Rule 15(a)(2), which will be addressed in sequence.

**a. Rule 16(b)(4)**

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." FED. R. CIV. P. 16(b)(3)(A). The requirement of setting a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." FED. R. CIV. P. 16(b) advisory committee's note (1983 Amendment); see also Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject

5

amended pleadings upon a showing of less than good cause after scheduling deadlines have expired.").

Whether "good cause" exists under Rule 16 depends in large part on the diligence, or lack thereof, of the moving party. See GlobespanVirata, Inc. v. Texas Instruments, Inc., Civ. No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting Rent-A-Ctr. v. Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. Apr.9, 2003)); Premier Comp Sols., LLC, 970 F.3d at 319. Put succinctly, "[a]bsent diligence, there is no 'good cause.'" Chancellor v. Pottsgrove Sch. Dist., 501 F.Supp.2d 695, 702 (E.D.Pa. Aug. 8, 2007); see also FED. R. CIV. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. See Stallings ex rel. Estate of Stallings v. IBM Corp., Civ. No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); Kennedy v. City of

6

<u>Newark</u>, Civ. No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline as set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. <u>See</u> <u>Dimensional Comm'ns, Inc. v. Oz. Optics, Ltd.</u>, 148 Fed. App'x. 82, 85 (3d Cir.2005) (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

Plaintiff has not specifically addressed Rule 16(b)(4) in the present unopposed Motion, however, "the fact that neither party specifically names Rule 16 or its required good-cause showing does not preclude the Court from applying that standard to plaintiff's motion to amend." <u>Sabatino v. Union Twp.</u>, No. CIV.A. 11-1656 JLL, 2013 WL 1622306, at *3 (D.N.J. Apr. 15, 2013).

Here, plaintiff submits that the facts occasioning the need to amend the Complaint were initially learned upon the disclosure of communications authored by Beth Bozzelli, which were produced by defendant on January 30, 2020. Based on the record, the Court cannot not find plaintiff possessed, or through the exercise of reasonable diligence should have possessed, the knowledge

necessary to file a motion to amend before the August 1, 2019 deadline. While plaintiff does not deny that certain relevant facts were learned approximately one year and one month before the present Motion was ultimately filed,[2] the Court recognizes that Ms. Bozzelli's deposition was promptly scheduled for March 9, 2020 and that its postponement to December 11, 2020 occurred by no fault of plaintiff and was undoubtedly impacted by the COVID-19 pandemic. Plaintiff represents he was cautious not to move for leave to amend before taking Ms. Bozzelli's deposition and confirming that sufficient evidence existed to warrant the proposed additional claims. Mot. at 11.   The Court notes that Rule 16(b)(4) does not require a party to exercise an advanced or superior level of diligence, but rather requires only reasonable diligence. Sabatino, No. CIV.A. 11-1656, 2013 WL 1622306, at *5 (citation omitted). In consideration of the foregoing, the Court is satisfied that plaintiff exercised reasonable diligence in bringing the Motion upon acquiring the operative information underlying his proposed claims and confirming sufficient evidence existed to bring them. Accordingly, the Court finds "good cause" exists under Rule 16(b)(4) to permit leave to amend the Complaint.

### b. Rule 15(a)(2)

---

[2] The Court notes "the passage of time, by itself, does not preclude a finding of good cause." Harding v. Jacoby & Meyers, LLP, No. CV 14-5419, 2018 WL 3377159, at *4 (D.N.J. July 11, 2018).

Where "good cause" has been shown, a court must then evaluate whether the movant has satisfied Rule 15(a)(2). See Premier Comp Sols., LLC, 970 F.3d at 319. "Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The court should freely give leave when justice so requires.'" Spartan Concrete Prod., LLC v. Argos USVI, Corp., 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2). Notwithstanding this liberal standard, denial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, prejudice to the opposing party, or futility.[3] Mullin v. Balicki, 875 F.3d 140, 149 (3d Cir. 2017) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Under Rule 15, the decision to amend rests within the sound discretion of the Court. Id. at 150; Heyl & Paterson Int'l Inc. v. F.D. Rich Hous. of Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981). "Pursuant to their discretion under Rule 15, courts generally grant leave to amend where, during the course of discovery, a party discovers new evidence." Sabatino, No. CIV.A. 11-1656, 2013 WL 1622306, at *6 (internal quotations omitted); see, e.g., Kronfeld v. First Jersey Nat'l Bank, 638 F.Supp. 1454, 1460 (D.N.J. June 20, 1986) (granting motion to amend

---

[3] The present Motion represents plaintiff's first attempt to amend the Complaint. Therefore, failure to cure deficiencies of amendments previously allowed is not implicated here.

upon discovery of new evidence where it did "not appear that the amendment would cause undue delay or that plaintiffs [had] a dilatory motive").

**1. Undue Delay**

"While simple delay cannot justify denying leave to amend by itself, delay that is 'undue' — a delay that is protracted and unjustified — can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave." Mullin v. Balicki, 875 F.3d at 151. There is no presumptive period in which delay becomes undue. Id. Thus, an assessment of undue delay requires courts to "focus on the movant's reasons for not amending sooner" while "bearing in mind the liberal pleading philosophy of the federal rules." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (internal citations omitted).

Plaintiff represents that the predicate facts for the proposed claims were initially learned when defendant produced emails authored by Beth Bozzelli on January 30, 2020. While plaintiff does not deny that certain relevant information was acquired approximately one year and one month before the present Motion was ultimately filed, the Court does not find this lapse in time to be indicative of undue delay under the circumstances. Upon receipt of the discovery on January 30, 2020 plaintiff represents that he promptly scheduled Ms. Bozzelli's deposition for March 9,

10

2020. There are no facts to indicate counsel for plaintiff could have anticipated that cancellations and multiple delays would have resulted in the deposition's postponement to December 11, 2020. To the contrary, the facts available to this Court suggest the delays resulted by no fault of plaintiff or plaintiff's counsel. Indeed, defendant has filed no response to the Motion challenging plaintiff's claims or otherwise alleging that plaintiff caused the delays. Moreover, plaintiff represents he was cautious not to move for leave to amend before taking Ms. Bozzelli's deposition and confirming that sufficient evidence existed to warrant the proposed additional claims. Mot. a 11. Accordingly, the Court finds plaintiff has provided a reasonable explanation for not amending earlier, and this factor, therefore, weighs in favor of granting leave. See Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984) ("The question of undue delay . . . requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier . . . ").

### 2. Bad Faith or Dilatory Motive

The Court finds there are no facts in the record to merit a finding of bad faith or dilatory motive on the part of plaintiff. As previously discussed, while certain relevant information underlying the proposed claims was learned approximately one year and one month before the present Motion was filed, the Court does not judge this lapse in time to be attributable to plaintiff's

improper motives. As such, this factor weighs in favor of granting leave.

### 3. Prejudice

When evaluating prejudice to the non-moving party in the context of a motion to amend, courts in the Third Circuit consider whether amendment would impair the non-moving party's "ability to present its case." Dente v. Saxon Mortg., Civ. A. No. 11-6933, 2012 WL 1664127, at *2 (D.N.J. May 11, 2012) (citing Heyl & Patterson Int'l, Inc., 663 F.2d at 426). Specifically, courts evaluate "whether the amendment would force the opponent to expend significant additional resources to conduct discovery and prepare for trial, as well as whether it would significantly delay resolution of the action." Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp., No. CV155477, 2017 WL 4404567, at *3 (D.N.J. Oct. 4, 2017).

Here, the circumstances do not suggest defendant would suffer undue prejudice if plaintiff were permitted to amend. First, defendant has filed no opposition suggesting prejudice. Second, the proposed amendment does not add new parties. Third, plaintiff represents he requires no additional depositions and agrees to submit to a second deposition at the request of defendant. The Court notes that significant discovery has already taken place in this litigation. However, should defendant identify a specific need for additional discovery limited to information pertaining to

the proposed claims, it may timely raise this issue with the Court

at the appropriate juncture. To the extent further discovery is

necessitated by the addition of plaintiff's proposed claims and/or

upon the anticipated filing of a motion to compel by plaintiff as

per his representation, any such discovery would be confined to

relatively discreet matters and therefore would not require

defendant to expend significant additional resources or

significantly delay resolution of the action. Lastly, the record

does not indicate that the plaintiff has acted in any way to obtain

a tactical advantage by adding the proposed additional claims at

this time. For these reasons, the Court finds defendant would not

be unduly prejudiced by the amendment, and this factor therefore

weighs in favor of granting leave.

### 4. Futility

Futility means the complaint, as amended, would fail to state

a claim upon which relief could be granted. Shane v. Fauver, 213

F.3d 113, 115 (3d Cir. 2000)(citation omitted). To determine

whether a claim is futile, district courts apply the same standard

of legal sufficiency as applies under Federal Rule of Civil

Procedure 12(b)(6). See id. (citation omitted); Travelers

Indemnity Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir.

2010) (citation omitted). The Court must accept as true all well-

pleaded factual allegations raised in plaintiff's proposed amended

pleading and must determine whether the facts, as alleged, support

13

a facially plausible claim on the grounds asserted. See Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).

It is well settled that a pleading will suffice if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. In other words, in order to withstand a Rule 12(b)(6) motion, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Id.; Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Twombly, 550 U.S. at 555).

Plaintiff seeks leave to amend the Complaint to add a count for retaliatory discharge in violation of the First Amendment and 42 U.S.C. § 1983 as well as a count for wrongful discharge in violation of public policy under New Jersey law.

### i.   Count Three: Retaliatory Discharge in Violation of The First Amendment and 42 U.S.C. § 1983

14

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must plead "(1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (quoting Palardy v. Twp. of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018), cert. denied, 139 S. Ct. 2011 (2019)) (internal quotations omitted).

In evaluating whether a public employee's conduct is deemed "protected", Courts in the Third Circuit consider (1) whether the employee spoke as a citizen; (2) whether the statement involved a matter of public concern; and (3) whether the government employer nevertheless had "an adequate justification for treating the employee differently from any other member of the general public" based on its needs as an employer. Id. at 753. The Supreme Court held in Garcetti v. Ceballos that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006); see also Jaworski v. New Jersey Tpk. Auth., No. CIV.A.05-4485, 2007 WL 275720, at *4 (D.N.J. Jan. 29, 2007).

15

Viewing the allegations raised in the proposed amended complaint in a light most favorable to the plaintiff, the Court is satisfied that plaintiff has pleaded sufficient factual matter to support a facially plausible claim for Retaliatory Discharge in Violation of The First Amendment and 42 U.S.C. § 1983. Plaintiff's proposed amended complaint alleges "Defendant considered Plaintiff's conduct of speaking out in support of Dr. Salasin's handling of his patient and his refusal to write a letter sanctioning Dr. Salasin, in deciding to terminate his employment." Proposed First Amended Complaint and Jury Demand, at p. 11, ¶ 9. Plaintiff further proposes to allege that "[d]ue to his position that Dr. Salasin acted appropriately in honoring the patient's rights, Plaintiff did not draft a letter to Dr. Salasin revoking his privileges[,]" as requested by the County in an email. Id. at ¶ 7. Instead, plaintiff simply forwarded the email to Dr. Salasin. Id. Given that the proposed amended complaint alleges the Nursing Home Administration effectively restricted plaintiff's discretion to make a determination about whether the sanction against Dr. Salasin was appropriate, the Court finds plaintiff can plausibly establish that his speech was outside the scope of his ordinary job responsibilities.[4] "The critical question under Garcetti is

_____

[4] Yet as the Third Circuit reminds us, "That such a dispute exists at this stage does not mean that one will, after discovery, remain for trial, and we do not imply that summary judgment will

16

whether the speech at issue is itself ordinarily within the scope

of an employee's duties, not whether it merely concerns those

duties." <u>Lane v. Franks</u>, 573 U.S. 228, 240 (2014). Moreover, the

Court finds plaintiff has alleged sufficient facts to plausibly

show that he acted, or refused to act, based upon his belief that

it would be dishonest and/or in violation of his ethical duties or

legal obligations as a physician in New Jersey to sanction Dr.

Salasin for honoring a patient's rights. "An employee's refusal to

make dishonest or fraudulent statements has been held to be within

the scope of First Amendment protection." <u>D'Ambola v. Lakewood Bd.</u>

<u>of Educ.</u>, No. CV 16-2735, 2017 WL 1206011, at *8 (D.N.J. Mar. 31,

2017). Plaintiff's decision to forward the email (as opposed to

ignoring it) also suggests his refusal to sanction Dr. Salasin

personally was conduct directed at a matter of public concern,

rather than in disregard of his job duties. Based on the foregoing,

the Court finds plaintiff has adduced sufficient factual matter to

support a facially plausible claim for Retaliatory Discharge in

Violation of The First Amendment and 42 U.S.C. § 1983 premised on

the theory that he was terminated without justification for

speaking as a citizen, in his individual capacity, on a matter of

public concern for patients' rights. Thus, plaintiff's proposed

amendment is not futile with respect to this additional claim. The

---

necessarily be inappropriate." <u>Flora v. Cty. of Luzerne</u>, 776
F.3d 169, 175 n.9 (3d Cir. 2015).

17

Court further notes that defendant has filed no response in this case alleging futility or providing any support for such a finding.

### ii.   Count Four: Wrongful Discharge in Violation of Public Policy under New Jersey Law

To state a claim for wrongful discharge in violation of public policy under New Jersey law, the <u>Pierce</u> doctrine requires a plaintiff to plead he or she was wrongfully discharged for "refusing to perform an act that violates a clear mandate of public policy." <u>Pierce v. Ortho Pharm. Corp.</u>, 84 N.J. 58, 72 (1980). "An employee who is wrongfully discharged may maintain a cause of action in contract or tort or both." <u>Day v. Wells Fargo & Co.</u>, No. CV176237, 2018 WL 1891476, at *2 (D.N.J. Apr. 20, 2018). "An action in contract may be predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy." <u>Pierce</u>, 84 N.J. at 72. "An action in tort may be based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy." <u>Id.</u>   "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions. In certain instances, a professional code of ethics may contain an expression of public policy." <u>Id.</u>

Here, the Court is satisfied that the pleadings contained in plaintiff's proposed amended complaint are sufficient to plausibly

allege a cause of action for wrongful discharge in violation of public policy under New Jersey law for the purposes of the present Motion. The proposed amended complaint alleges (1) plaintiff was employed by defendant, giving rise to a duty not to discharge plaintiff in violation of public policy and/or an implied covenant of good faith and fair dealing; and, (2) defendant breached its duty and the implied covenant when it discharged plaintiff for his statements and conduct supporting Dr. Salesin's decision to discharge the subject patient from Crest Haven. It further identifies N.J.A.C. 8:36-4.1 and 8:43G-41.1, and N.J. Rev Stat § 30:13-5 (2019) as the specific expressions of public policy which grounded those statements and conduct. Based on the foregoing, the Court finds plaintiff has adduced sufficient factual matter to support a facially plausible claim for Wrongful Discharge in Violation of Public Policy under New Jersey Law. The Court again notes that defendant has raised no futility argument to the contrary.

## Conclusion

For the reasons stated above, plaintiff's Motion seeking leave to file the proposed amended complaint [Doc. No. 28] is granted. An appropriate order shall issue.

s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge

19

At: Camden, New Jersey